(Not for Publication)                                              (Docket Entry No. 42)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                                   :
CHARLES F. WELSH,              :
                                                   :
                    Plaintiff,     :
                                                 :
                      v.                       :       Civil No. 06-2047 (RBK)
                                                 :
MAERSK LINE, LTD.,          :       **OPINION**
                                                 :
                  Defendant.   :
_____:

**KUGLER**, United States District Judge:

       Presently before the Court is a motion for partial summary judgment by Defendant Maersk Line, Ltd. ("Maersk"), seeking to dismiss Plaintiff Charles F. Welsh's claims for maintenance and cure, unearned wages and repatriation costs. For the reasons that follow, Maersk's motion will be denied as to Mr. Welsh's claim for maintenance and cure and granted as to Mr. Welsh's claims for unearned wages and repatriation costs.

**I.**       **BACKGROUND**

       On April 17, 2005, Charles F. Welsh reported aboard the Sealand Performance ("Performance"), a Maersk vessel, at a port in Spain. The same day, Mr. Welsh completed a Maersk pre-assignment questionnaire, on which he indicated that he did not have any chronic illnesses and had not received any medical treatment since his last physical (which was in August 2004). (See Def.'s Mot. Summ. J. Ex. A.) At the time he completed the questionnaire, Mr.

1

Welsh had a history of arthritis and hemochromatosis, a disorder that causes a person's body to absorb too much iron. Further, in October 2004, Mr. Welsh had seen Dr. David Anapolle, who noted that Mr. Welsh suffered from arthritis and left ankle pain, and diagnosed Mr. Welsh with "left ankle DJD." (See Def.'s Mot. Summ. J. Ex. C.) "DJD" stands for degenerative joint disease. (See Def.'s Mot. Summ. J. Ex. P at 3.)

Mr. Welsh claims that within twenty-four hours of boarding the Performance, he fell from a broken ladder and injured his Achilles tendon. Mr. Welsh reported his injury on April 26, 2005. This injury was aggravated on May 11, 2005. Mr Welsh claims that he was denied medical treatment for this injury.

Beginning on May 5, 2005, Mr. Welsh was repeatedly cited for misconduct aboard the Performance. (See Def.'s Mot. Summ J. Ex. F.) Mr. Welsh was discharged on May 14, 2005. (See Def.'s Mot. Summ. J. Ex. G.)

On May 18, 2006, Mr. Welsh filed an Amended Complaint in this personal injury suit against Maersk, claiming he was injured by an unseaworthy ladder and denied medical treatment while working for Maersk. Mr. Welsh seeks lost wages, repatriation costs, and damages for pain and suffering. On December 25, 2007, Maersk filed the motion for partial summary judgment now before the Court. Mr. Welsh opposes Maersk's motion.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the

nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331. If the moving party does not present evidence sufficient to show the absence of a genuine issue of material fact, then summary judgment must be denied, even if the non-moving party has presented no evidence in response. Maldonado v. Ramirez, 757 F.2d 48, 50 (3d Cir. 1985).

If the moving party satisfies the initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

**III.   DISCUSSION**

Maersk claims that Mr. Welsh is not entitled to maintenance and cure because he concealed several medical conditions on his pre-employment questionnaire, and these medical conditions were material to Maersk's decision to hire Mr. Welsh and related to the injury that is

3

the basis of this suit. Further, Maersk claims that because Mr. Welsh was discharged for misconduct, he is not entitled to recover unearned wages and the cost of repatriation. The Court finds that there is a genuine issue of material fact as to whether the medical conditions Mr. Welsh failed to disclose were material to Maersk's hiring decision and related to the injury that is the basis of this suit, and therefore denies Maersk's motion for summary judgment as to maintenance and cure. The Court also finds, however, that there is no genuine issue of material fact as to the reason for Mr. Welsh's discharge, and therefore grants Maersk's motion for summary judgment as to the cost of repatriation and unearned wages.

### A.    Maintenance and Cure

Generally, seamen who are injured while working on a vessel are entitled to maintenance and cure from their employers. Deisler v. McCormack Aggregates, Co., 54 F.3d 1074, 1079 (3d Cir. 1995). "Maintenance is the living allowance for a seaman while he is ashore recovering from injury or illness." Barnes v. Andover Co., 900 F.2d 630, 633 (3d Cir. 1990). "Cure is payment of medical expenses incurred in treating the seaman's injury or illness." Id. A seaman may not, however, recover maintenance and cure if (1) the seaman intentionally misrepresented or concealed medical facts, (2) these medical facts were material to the employer's decision to hire him, and (3) there is a nexus between the medical facts and the injury at issue. Deisler, 54 F.3d at 1080 (citing McCorpen v. Central Gulf S.S. Corp., 396 F.2d 547 (5th Cir. 1968)). The vessel owner has the burden of proving all three elements. See Brown v. Parker Drilling Offshore Corp., 410 F.3d 166, 171 (5th Cir. 2005).

Maersk argues that Mr. Welsh is not entitled to maintenance and cure because he concealed facts on his pre-employment medical questionnaire. Specifically, when asked whether

4

he suffered from any chronic conditions, Mr. Welsh failed to disclose that he suffered from arthritis, degenerative joint disease (DJD), and hemochromatosis.  Further, he stated that he had not received treatment since his last physical, when in fact he had seen a doctor.   Maersk argues that these facts were material to Maersk's decision to hire Mr. Welsh and that they were related to the injury at issue in this case, which Maersk characterizes as an ankle injury.  In response, Mr. Welsh argues that (1) he did not intentionally conceal material facts about his medical condition because his doctor's visit after his last physical was not "treatment" and because his medical conditions were not "chronic," and (2) his preexisting arthritis was not related to the injury at issue (tendinitis).  Mr. Welsh does not contest the materiality of the medical facts that were not disclosed.

### 1. Intentional Concealment

With respect to the first prong of the McCorpen test, the Court finds that there is no genuine issue of material fact.  Maersk has presented evidence that Mr. Welsh provided false answers on his medical questionnaire.  Whether these false answers amounted to intentional misrepresentations is a more difficult question.  The Third Circuit Court of Appeals has recognized a possible disagreement about the test for determining when a misrepresentation is intentional, but has not yet adopted a position.  See Deisler, 54 F.3d at 1081 n.11.  The majority position is that where a seaman who understands English fails to disclose medical conditions on a pre-employment questionnaire that specifically asks about medical history, he has acted intentionally.  See McCorpen, 396 F.2d at 550 (finding knowing concealment where seaman understood English and knew he had diabetes); see also Vitcovich v. Ocean Rover O.N., No. 94-35047, 1997 WL 21205, at *3 (9th Cir Jan. 8, 1997) ("Failure to disclose medical information

5

in an interview or questionnaire that is obviously designed to elicit such information therefore satisfies the 'intentional concealment' requirement."). The Second Circuit Court of Appeals, however, has stated that the test of intent is subjective, and that a seaman should not be denied maintenance and cure if he believed in good faith that he was fit for duty at the time he failed to disclose a medical condition. See Sammon v. Cent. Gulf S.S. Corp., 442 F.2d 1028, 1028 (2d Cir. 1971).

Here, the Court adopts the majority position and finds that there is no genuine issue of material fact about whether Mr. Welsh intentionally concealed his medical conditions. Mr. Welsh knew he had arthritis and hemochromatosis and failed to disclose these conditions on a medical questionnaire that sought this type of information. There is no indication that Mr. Welsh did not understand English or was unaware of his conditions at the time he completed the questionnaire.[1] Therefore Maersk has satisfied its burden as the party moving for summary judgment. The burden then shifts to Mr. Welsh to show that there is a genuine issue of material fact. Mr. Welsh has presented no evidence to support the claim in his brief that he did not believe arthritis and hemochromatosis were "chronic" conditions or that his October 2004 doctor's visit was not "treatment." Therefore he has not satisfied his burden as to the first prong of the McCorpen test.

### 2. Materiality

With respect to the second prong of the McCorpen test, the materiality of the concealment to the employer's decision to hire the seaman, the court finds that Maersk has not shown that it is

---

[1] In his opposition brief, Mr. Welsh suggests that there is no evidence that Dr. Anapole told him that he had DJD, or told him what DJD meant. Even if Mr. Welsh did not know he suffered from degenerative joint disease, Mr. Welsh was aware of his other medical conditions.

entitled to summary judgment.  Maersk argues that the fact that it asked about health conditions shows that such conditions were relevant to its hiring decisions.  The Third Circuit Court of Appeals has suggested that an employer may demonstrate that it relied on a seaman's concealment of his medical condition by showing that it used a detailed medical questionnaire in the hiring process.  See Deisler, 54 F. 3d at 1082 n.11; see also Brown v. Parker Drilling Offshore Corp., 410 F.3d 166, 175 (5th Cir. 2005) ("The fact that an employer asks a specific medical question on an application, and that the inquiry is rationally related to the applicant's physical ability to perform his job duties, renders the information material for the purpose of this analysis.").  However, where the employer uses a standard employment application form that asks one general question about health conditions, a court should not presume that the concealment was material to the employer's decision to hire the seaman.  See Deisler, 54 F.3d at 1082 n.11.  Here, the form was limited to medical questions, but the questions at issue, whether Mr. Welsh had any chronic conditions and whether Mr. Welsh had received any treatment since his last physical, were general.  By contrast, the question in Brown, whether the seaman had any back or neck injuries, was more specific.  See Brown, 410 F.3d at 169.  Because Maersk's only evidence of materiality is the fact that it used a medical questionnaire, and because of the general nature of the questions on the questionnaire, the court finds that Maersk has failed to demonstrate that Mr. Welsh's medical conditions would have affected its decision to hire him.

### 3. Causal Connection Between Preexisting Condition and Injury

With respect to the third prong of the McCorpen test, whether the preexisting condition was causally related to the injury at issue in this case, the Court finds that there is a genuine issue of material fact, and therefore, that summary judgment is not appropriate.  Maersk contends that

the injury in this case is to Mr. Welsh's left ankle. Mr. Welsh contends that the injury is to his Achilles tendon. Maersk relies in part on Mr. Welsh's deposition testimony, in which he said that the injury at issue was "from my ankle up my leg" and "the back of my ankle." (See Def.'s Mot. Summ. J. Exs. L and M.) Maersk also relies on the Progress Notes of Dr. Marotta, who saw Mr. Welsh in May 2005, shortly after Mr. Welsh was injured aboard the Performance. Dr. Marotta's notes indicate that Mr. Welsh suffered from "ankle pain," but also indicate that Mr. Welsh had "tenderness over [his] Achilles tendon." (See Def.'s Mot. Summ. J. Ex. O.) Maersk's own evidence shows a genuine issue of material fact as to the nature of Mr. Welsh's injury and the causal connection between his preexisting conditions and his injury aboard the Performance. Because the Court finds that there are genuine issues of material fact as to the second and third prongs of the McCorpen, the Court denies Maersk's motion for summary judgment as to Mr. Welsh's claim for maintenance and cure.

      **B.    Cost of Repatriation**

Maersk argues that Mr. Welsh is not entitled to the cost of repatriation because he was discharged for cause. A seaman is not entitled to the cost of repatriation if he is discharged for cause in a foreign port. American Foreign Steamship Co. v. Matisse, 423 U.S. 150, 158 n.14 (1975).

To support its position that Mr. Welsh was discharged for cause, Maersk has presented evidence of Mr. Welsh's repeated misconduct between May 5 and May 12. (See Def.'s Mot. Summ. J. Exs. E-G.) This is sufficient to meet Maersk's burden. In response, Mr. Welsh does not deny that he had several disagreements with his superiors. He claims that he was discharged both because of his medical complaints and because of his conflicts with managers aboard the

Performance. Mr. Welsh argues that the timing of his discharge is "suspect" because it occurred three days after he complained of a re-injury to his tendon. Mr. Welsh's brief in opposition to Maersk's motion for summary judgment states that "Mr. Welsh will testify that he believes his discharge occurred as a consequence of his medical complaints when viewed in light of his difficulties with management of the vessel regarding his performance." (See Pl.'s Opp. Br. at 11.) Mr. Welsh has failed, however, to present evidence to support this argument in his brief, and therefore has not met his burden.[2] See Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109-10 (3d Cir. 1985) ("Legal memoranda and oral argument are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion.").

Having found that there is no genuine issue of material fact as to the reason for Mr. Welsh's discharge, the Court finds that Mr. Welsh is not entitled to the cost of repatriation. Therefore, the Court will grant Maersk's motion with respect to Mr. Welsh's claim for the cost of repatriation.

### C. Unearned Wages

A seaman who is injured during his employment aboard a vessel is usually entitled to wages he would have earned from the time of the injury until the end of the voyage ("unearned wages").[3] See Blainey v. American S.S. Co., 990 F.2d 885, 887 (6th Cir. 1993). A seaman may not, however, recover unearned wages for any period after he is discharged for cause. See Blouin

---

[2] While Mr. Welsh presented letters of reference from previous employers, the Court will not consider them because they are not relevant to the circumstances of Mr. Welsh's discharge from the Performance and are also inadmissible character evidence. See Fed. R. Evid. 404.

[3] These "unearned wages" are distinguishable from lost wages that a seaman may seek in a Jones Act or unseaworthiness claim. See Vickers v. Tumey, 290 F.2d 246, 435 (5th Cir. 1961).

v. American Export Isbrandtsen Lines, Inc., 319 F. Supp. 1150, 1156 (S.D.N.Y. 1970) (finding seaman was not entitled to unearned wages where immediate cause for leaving ship was his own misconduct).  Mr. Welsh received wages from the time of his injury until the time of his discharge.[4]  (See Def.'s Mot. Summ. J. Ex. J.)  Having already determined that Mr. Welsh was discharged for misconduct, the Court finds that Mr. Welsh may not recover unearned wages for any period after his discharge.  Therefore, the Court grants Maersk's motion for summary judgment with respect to unearned wages.

IV.  CONCLUSION

Based on the foregoing reasoning, the Court denies Maersk's motion for summary judgment with respect to Mr. Welsh's claim for maintenance and cure and grants Maersk's motion for summary judgment with respect to Mr. Welsh's claims for unearned wages and the cost of repatriation.  An accompanying Order shall issue today.


Dated:  9-28-08                                               /s/ Robert B. Kugler
                                                              ROBERT B. KUGLER
                                                              United States District Judge

---

[4] Maersk provided repatriation funds of $1084.94 to Mr. Welsh and deducted this amount from Mr. Welsh's final paycheck.  These repatriation funds were partial payment of his wages.  See Matisse, 423 U.S. at 157-58 (finding repatriation costs spent on seaman's behalf constituted partial payment of wages); Escobar v. S.S. Washington Trader, 640 F.2d 1063, 1065 (9th Cir. 1981) (same).